FILED
September 25, 2018
Time 8:46 AM
TN COURT OF
WORKERS' COMPENSATION
CLAIMS



**TENNESSEE BUREAU OF WORKERS' COMPENSATION**
**IN THE COURT OF WORKERS' COMPENSATION CLAIMS**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| **Terry Lamm,** | ) | **Docket No. 2015-01-0429** |
| **Employee,** | ) | |
| **v.** | ) | |
| **E. Miller Construction, Inc.,** | ) | **State File No. 64870-2015** |
| **Employer.** | ) | |
| **And** | ) | |
| **Bridgefield Casualty Co.,** | ) | **Judge Thomas Wyatt** |
| **Insurer.** | ) | |

---

## COMPENSATION ORDER AWARDING PERMANENT PARTIAL DISABILITY AND MEDICAL BENEFITS

---

This claim came before the Court on September 14, 2018, for a Compensation Hearing. The threshold legal issues were whether Terry Lamm's claim is barred by his alleged willful misrepresentation of his spine history, and whether his back injury arose primarily out of and in the course and scope of his employment. For the reasons below, the Court awards Mr. Lamm permanent partial disability and medical benefits.

### History of Claim

*Procedural Background*

Mr. Lamm filed this claim after E. Miller Construction, Inc. (EMC) denied further medical treatment and temporary disability benefits because the then-treating physician gave the opinion that Mr. Lamm's back condition did not arise primarily out of and in the course and scope of employment. After an Expedited Hearing, the Court ordered EMC to provide a panel.[1] EMC next sought summary judgment based on the panel physician's causation opinion, but the Court denied the motion after finding genuine issues of material fact existed on the cause of Mr. Lamm's injury and his right to future medical benefits.

---

[1] EMC initially referred Mr. Lamm for treatment without offering a panel.

1

*Mr. Lamm's Injury*

Mr. Lamm is a fifty-seven-year-old resident of Monroe County, Tennessee. EMC hired him in January 2015 and assigned him to a crew supervised by Terry Garren. Mr. Garren testified Mr. Lamm was a good employee who successfully completed all assigned tasks. He worked forty hours per week during most of his employment at EMC and worked overtime during several weeks. EMC's pay records indicate Mr. Lamm worked every week from the date of hire until mid-July 2015, when he missed two weeks due to back pain from a fall in the shower. He returned to work on August 5 and worked at least eight hours per day until the date of injury. He worked five hours on August 12, the date of injury.

On that date, Mr. Lamm was assigned to a crew supervised by Darren Galyon. Mr. Galyon testified Mr. Lamm told him early that day that his back was sore. Mr. Galyon told him to let him know if a task was too hard for him to do, and he would re-assign him.

Around mid-day, Mr. Lamm and Mr. Galyon went to the roof of a Johns-Manville plant in Etowah, Tennessee, to help other EMC employees lift an H-beam. The other employees lifted one end of the beam and placed it into brackets approximately six feet above the roof. Mr. Lamm, Mr. Galyon and another employee lifted the other end of the beam into its set of brackets. Mr. Lamm testified this "got my back," explaining that he felt pain and a pop as he and the other employees lifted the beam overhead. Because of his back pain, he exited the roof by walking down interior stairs instead of climbing down the ladders he used to access the roof.

Mr. Galyon testified the weight of the beam was not "hard" for three men to lift and stated that Mr. Lamm did not immediately tell him he was hurt. He added that Mr. Lamm left the roof the same way he got there: by climbing down ladders. Mr. Galyon said Mr. Lamm continued working after the lifting incident but soon reported that he needed to leave because his back hurt. Mr. Lamm testified that he called for a ride home because his back pain was too severe for him to drive.

*Treatment Following the Incident at EMC*

Mr. Lamm sought treatment at a hospital two days after the injury. He reported he hurt his back while lifting steel beams and described a previous back surgery. Mr. Lamm received an injection and pain medication and was released with a diagnosis of lumbar strain.

Mr. Lamm next sought treatment under workers' compensation. EMC sent him to Lakeway Urgent Care on August 17 without providing a panel. The Lakeway records

2

documented that Mr. Lamm reported a lifting injury at EMC and a previous successful back surgery. The providers diagnosed a back strain, prescribed medication and physical therapy, and placed restrictions on bending, stooping, squatting, and lifting.[2]

Dr. John Sanabria at Lakeway noted no changes in Mr. Lamm's symptoms during the next visit. He discontinued physical therapy, ordered an MRI, and kept Mr. Lamm on the same restrictions. At an October 19 visit, Dr. Sanabria told Mr. Lamm that the MRI did not show an acute injury, placed him at maximum medical improvement (MMI), and declared him "[f]it for duty without restrictions." He also advised him to seek care from a personal physician for "the degenerative changes in [his] lumbar spine."

Mr. Lamm filed this claim and requested an Expedited Hearing after EMC refused further treatment based on Dr. Sanabria's release. The Court ordered EMC to provide a panel. EMC complied, and Mr. Lamm selected orthopedist Dr. Jay Jolley.

Mr. Lamm did not see Dr. Jolley until January 2017 and only received a causation evaluation.[3] Before the appointment, EMC sent Dr. Jolley a causation inquiry asking if he agreed with Dr. Sanabria's opinion that Mr. Lamm's injury at EMC "did not contribute more than 50% in causing his disablement or need for medical treatment, considering all causes." After the appointment, Dr. Jolley checked boxes indicating his agreement with Dr. Sanabria's opinion. EMC later provided Dr. Jolley a C-32 form in which he wrote that Mr. Lamm "had some aggravation to his pre-injury ddd (but the employment did not cause the ddd)."[4]

*Medical Testimony*

At the Compensation Hearing, the parties introduced causation opinions through the deposition testimony of four physicians. Mr. Lamm relied on the testimony of orthopedist Dr. William Kennedy, whom he saw once for an evaluation. Dr. Kennedy concluded that Mr. Lamm's injury at EMC constituted a permanent aggravation of pre-existing degenerative disc disease in his lumbar spine, with the injury at EMC resulting in more than fifty percent of the cause of his current need for treatment. Dr. Kennedy noted that Mr. Lamm's back pain before the injury at EMC waxed and waned and did not prevent him from working physically-demanding jobs, while his post-injury pain was constant and prevented him from working.

---

[2] EMC began paying temporary disability benefits on August 17 and continued until Dr. Sanabria released him on October 19.

[3] The appeal of the Court's Expedited Hearing Order delayed Mr. Lamm's appointment with Dr. Jolley.

[4] "ddd" is an abbreviation for degenerative disc disease.

During his first deposition, Dr. Kennedy supported his causation opinion with the lack of medical records indicating that Mr. Lamm underwent back treatment during the years immediately before the injury at EMC. EMC later located records showing that Mr. Lamm received treatment for back pain for years, including just fourteen days before his injury at EMC.

Dr. Kennedy considered the newly-discovered records before he gave a supplemental deposition in which he did not change his causation opinion. In support of his conclusion, Dr. Kennedy cited the fact that Mr. Lamm was always able to return to work following the treatment he received before the injury at EMC. He characterized these treatments as indicative of the waxing and waning nature of Mr. Lamm's back pain before he permanently aggravated his degenerative spinal disease at EMC.

Dr. Kennedy was the only testifying doctor who rated Mr. Lamm's impairment. He gave an impairment of nine percent to the whole body from his injury at EMC. He testified that this impairment rating was distinct from the rating Mr. Lamm received following the 1999 surgery, and his impairment rating for both conditions was eighteen percent to the whole body.

EMC presented the deposition testimony of Drs. Jolley, Sanabria, and Edward Kahn, an IME orthopedist, regarding causation. Dr. Jolley determined that, "at worst," Mr. Lamm suffered a temporary back sprain at EMC in August 2015. He added that, because the July 2015 episode of back pain was so similar to the pain Mr. Lamm described after the injury at EMC, he could not tell whether Mr. Lamm's pain in August 2015 had its genesis in the fall in the shower or lifting at EMC. Dr. Jolley also testified that Mr. Lamm "very likely [suffered] no real injury whatsoever" at EMC. Finally, Dr. Jolley testified that Mr. Lamm needs two-level fusion surgery due to painful instability caused by the degenerative disc disease in his lumbar spine, but the injury at EMC was not the primary cause of the need for surgery.

Dr. Sanabria testified that Mr. Lamm sustained a lumbar sprain at EMC. He explained that the MRI did not reveal any findings of an acute injury. He further stated that Mr. Lamm's back sprain returned to the pre-injury-at-EMC "baseline" by October 19. Thus, he set MMI on that date and released him to return to work without restrictions.

On cross-examination, Dr. Sanabria testified that the lifting incident at EMC "would be considered an aggravation or exacerbation" of the pre-existing conditions in Mr. Lamm's spine. However, he concluded that the aggravation was not work-related under the 2013 changes to the workers' compensation law. Dr. Sanabria stated that he attended a seminar where an attorney instructed that, under the 2013 changes in the law, aggravations and exacerbations are not compensable unless they occur soon after the employee begins performing the offending work-related activity.

4

Finally, Dr. Kahn testified that the lifting incident at EMC caused a lumbar strain and an aggravation of pre-existing conditions. He stated that both the strain and the aggravation were temporary. Dr. Kahn asserted that Mr. Lamm's July 2015 back pain episode either made him more likely to injure his back at EMC in August 2015 or continued at the time of the lifting incident and accounted for some of the pain Mr. Lamm experienced after that incident. Finally, Dr. Kahn asserted that "[w]ith the new Tennessee laws, you can't have an aggravation of a pre-existing [condition] be a compensatory injury."

## Work History Since EMC

Mr. Lamm testified that his back injury at EMC totally disabled him. He, his mother, and his daughter testified that, except for periods of temporary flare-ups of back pain, Mr. Lamm was able to clean and maintain his house and yard, fish and camp, play with his grandchildren, maintain his truck, and work before the injury at EMC. Mr. Lamm testified he tried to do light work around his house after his injury, but back pain caused him to quit. He recently successfully applied for SSI benefits.

## EMC's Willful Misrepresentation Defense

Mr. Lamm did not graduate from high school or obtain a GED. He testified that he can barely read and has no computer or math skills. His mother stated that Mr. Lamm has been "slow" following a head injury when he was a small child, and he can only read "small words." She and Mr. Lamm's daughter testified that he has always had a bad memory, and they go to the doctor with him because he cannot recall what the doctor told him.[5]

Mr. Lamm has worked since age fourteen, mostly in construction jobs. He injured his back on the job in 1999 and underwent lumbar disc surgery. Afterward, he returned to work for the same employer and continued to work in construction. Although he occasionally missed work after 1999 due to back pain, Mr. Lamm continued to work until his injury at EMC.

Mr. Lamm worked as a janitor at JETKT, a manufacturing plant, before applying at EMC. EMC performed work for JETKT, and through that work, Mr. Lamm asked Mr. Garren if EMC was hiring. Mr. Garren suggested that he apply and list him as a reference. EMC hired Mr. Lamm without asking for health information and assigned him to Mr. Garren's crew.

---

[5] Mr. Lamm testified on numerous occasions during the Compensation Hearing that he had no memory of things about which he was asked to testify, including signing the Health Questionnaire at the center of EMC's willful misrepresentation defense.

After hiring him, EMC gave Mr. Lamm a Health Questionnaire. Its safety manager, Andrew Harrell, testified EMC did not use the information in the questionnaire in its hiring decision but had it available to decide what kind of accommodations its employees needed. Mr. Lamm stated that he did not remember completing the questionnaire, but he confirmed that the date and signature on the documents were his. The questionnaire contained "No" answers to every inquiry on the questionnaire, including those asking whether he had ever undergone surgery or received treatment or hospitalization for "[b]ack pain or discomfort of any kind"

Mr. Lamm's "No" responses about back pain and surgery were false, as he previously underwent surgery and received injections, physical therapy, and pain-medication prescriptions for lumbar spine conditions. Before starting work at EMC in 2015, Mr. Lamm received pain management in Georgia and Tennessee and underwent an MRI in 2014 that revealed severe degenerative disc disease at the L3-L4 and L4-L5 levels of his spine. Had EMC obtained Mr. Lamm's past medical records, it would have learned that, after surgery in 1999, a doctor restricted him from lifting more than fifty pounds occasionally and twenty pounds frequently.

EMC rested its willful misrepresentation defense on the testimony of Mr. Harrell, who asserted that he would not have assigned Mr. Lamm the task on which he was injured had he known his medical history. However, EMC presented no testimony that EMC's supervisors ever called Mr. Harrell to determine if they should assign Mr. Lamm or any employee certain jobs. No witness testified that EMC had a policy requiring supervisors to ask Mr. Harrell to approve job assignments for the employees on their crews.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

Mr. Lamm has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). At a Compensation Hearing, he must establish his entitlement to benefits by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2017); *see also Willis v. All Staff*, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *18 (Nov. 9, 2015).

Here, EMC contended that Mr. Lamm is not entitled to benefits because he willfully misrepresented his spinal history. EMC has the burden of proving its affirmative willful misrepresentation defense by a preponderance of the evidence. *See generally* Tenn. Code Ann. § 50-6-110(b).

6

*Willful Misrepresentation Defense*

The Court first considers whether the willful misrepresentation defense survived the 2013 reforms to the Workers' Compensation Law, an issue of first impression. The Court holds it remains viable.

The Workers' Compensation Appeals Board held that reliance on Tennessee Supreme Court precedent pre-dating the 2013 reforms is appropriate unless (1) the rationale of the precedent is based on statutory enactments changed or repealed by the 2013 reforms, or (2) the rationale is based on principles, such as liberal construction, or resolution of reasonable doubt, in favor of the employee, that the 2013 reforms eliminated. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Mar. 27, 2015).

In *Federal Copper and Aluminum Company v. Dickey*, 493 S.W.2d 463, 464 (Tenn. 1973), the Tennessee Supreme Court decided that a willful misrepresentation defense existed in workers' compensation cases even though the general assembly had not enacted this defense. The Court explained: "An employee who has wilfully [sic] misrepresented or failed to disclose material information regarding his physical condition should not be permitted a recovery in a work[ers'] compensation case merely because the legislature failed to anticipate the problem with a specific provision to that effect."

The 2013 reforms did not abrogate the willful misrepresentation defense. Further, *Dickey* is not based on a liberal construction of the law or on any requirement to resolve reasonable doubt in favor of an employee. Thus, the Court holds that willful misrepresentation remains a viable defense under the current Workers' Compensation Law.

In *Dickey*, the Supreme Court adopted the following test for application of the willful misrepresentation defense:

> The following factors must be present before a false statement in an employment will bar benefits: (1) The employee must have knowingly and willfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial in the hiring. (3) There must have been a causal connection between the false representation and the injury.

*Id.* at 465.

EMC satisfied the first prong of the *Dickey* test. The Court rejects Mr. Lamm's argument that he did not knowingly and willfully misrepresent his spinal health because he cannot read and does not remember answering the questions. Further, the Court finds

7

no basis to conclude that an EMC employee or some other person answered the questions without input from Mr. Lamm. The Court also finds that EMC satisfied the third prong of the *Dickey* test because the subject of the misrepresentation was his spinal health and the injury for which he seeks benefits is a spinal injury.

The application of the willful misrepresentation defense here turns on whether EMC proved the second prong of the test—that it relied to its detriment on the inaccurate information in the questionnaire about Mr. Lamm's spine history. The Court holds that EMC did not satisfy its burden.

The Court notes that the *Dickey* test arose in the context of misrepresentation in the hiring process. Thus, if the misrepresentation defense is limited to the hiring context, it does not apply here because Mr. Harrell testified that EMC did not utilize information in the questionnaire for that purpose.

But even if the misrepresentation defense were broad enough to apply to post-hiring decisions, the Court holds that EMC did not establish the requirement that it detrimentally relied on the information in the questionnaire in deciding Mr. Lamm's job duties. Mr. Harrell did not testify that he or anyone with EMC was ever asked to check the information in the questionnaire. Further, although two EMC supervisors who directed Mr. Lamm's activities testified during the Compensation Hearing, neither stated they ever called EMC to determine if Mr. Lamm could perform a task. In fact, on the date of injury, EMC's supervisor knew Mr. Lamm had back soreness, but he left it up to him to decide whether he could perform an assigned task instead of calling to discuss the issue with Mr. Harrell. In view of the above, the Court holds EMC did not prove that it detrimentally relied on the inaccurate information in the questionnaire, as it must do to invoke the defense.

*Compensability*

Under Tennessee law, Mr. Lamm has the burden of proving that his injury arose primarily out of and in the course and scope of employment. To satisfy this burden, he must come forward with proof "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." He must establish this "to a reasonable degree of medical certainty." "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." *See generally* Tenn. Code Ann. § 50-6-102(14).

Here, the parties relied on competing causation opinions of medical experts. When presented with conflicting medical proof, the Court must determine if the preponderance of all the evidence, including lay evidence, rebuts the presumption of

8

correctness afforded the causation opinion of the treating physician. Within that framework, a trial judge "has the discretion to conclude that the opinion of one expert should be accepted over that of another expert" as containing the more probable explanation of any disputed point. *See Sanker v. Nacarato Trucks, Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *11-12 (Jul. 6, 2016).

Here, the Court gives little weight to the opinions of Drs. Kahn and Sanabria. Both doctors' opinions were clouded by the erroneous concept that, under current law, aggravations of pre-existing conditions are not compensable, or are only compensable if they occur near the beginning of the employment. Tennessee Code Annotated section 50-6-102(14)(A) provides that an aggravation of a pre-existing condition is compensable if "it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment."

Dr. Jolley's opinion that Mr. Lamm's current back pain, its need for treatment, and its accompanying impairment and disability did not arise primarily out of and in the course and scope of employment is entitled to a presumption of correctness. Thus, the focus is whether the preponderance of the evidence rebuts Dr. Jolley's opinion. The Court holds that the preponderance of the evidence rebuts his opinion and establishes that Mr. Lamm's injury at EMC arose primarily out of and in the course and scope of employment.

The Workers' Compensation Appeals Board in *Creasman v. Waves, Inc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 13, at *9-11 (Apr. 16, 2018), gave guidance for courts when weighing the testimony of conflicting experts. The Board identified the following considerations in this analysis:

- The qualifications of the experts;
- The thoroughness with which the experts reviewed pertinent information in arriving at their opinions;
- The experts' documentation and explanation of their evaluative processes; and
- The consistency of the experts' opinions with the factual information developed at trial.

The Court finds Drs. Jolley and Kennedy are both qualified and experienced orthopedists. Both doctors reviewed essentially the same records in arriving at their different causation opinions. However, the Court is troubled that EMC initially solicited Dr. Jolley's causation opinion by asking if he agreed with another doctor's opinion. Thus, the Court reduces the weight it gives Dr. Jolley's opinion because EMC predisposed him to another doctor's causation opinion.

But the underlying facts developed during the Compensation Hearing separate their causation opinions in the Court's mind. The preponderance of the evidence

9

established that, although Mr. Lamm at times suffered flare-ups of back pain, he successfully maintained his capacity to work physically-demanding jobs before he was injured at EMC. In the months before the work injury, Mr. Lamm worked full time for JETKT and successfully performed strenuous construction work for EMC until the injury. Further, he worked eight or more hours for four days after returning to work from his bout of back pain in July 2015. Since the injury at EMC, Mr. Lamm has consistently reported back and leg pain to his providers and has been unable to work.

Considering the above facts, the Court accepts the causation opinion of Dr. Kennedy as the best explanation for the causation of Mr. Lamm's injury. Thus, the Court holds that Mr. Lamm suffered a permanent aggravation of the pre-existing conditions in his lumbar spine while helping to lift an H-beam at EMC on August 12, 2015. The Court also holds that Mr. Lamm's disability and need for treatment for back and leg pain since the lifting incident at EMC arose primarily out of and in the course and scope of employment.

*Permanent Partial Disability Benefits*

Based on the above holding, the Court awards Mr. Lamm permanent partial disability (PPD) benefits based on Dr. Kennedy's nine-percent whole-body rating. However, the Court must set the applicable compensation rate before finalizing its award. EMC's payroll records indicate that it paid Mr. Lamm a total of $19,580.00 during the thirty weeks between the date of hire and the last date he worked. Thus, his average weekly wage is $652.67, making his compensation rate $435.11.

Tennessee Code Annotated section 50-6-207(3) governs an employee's right to PPD benefits. Subdivision (A) provides for an original award of PPD calculated by multiplying the applicable impairment rating by 450 weeks (40.5 weeks). Thus, the Court awards Mr. Lamm an original award totaling $17,621.96, based on Dr. Kennedy's nine-percent whole-body rating.

Subdivision (B) provides for a resulting award of PPD benefits "[i]f at the time the [original period of compensation] ends the employee has not returned to work." Mr. Lamm's original period of compensation ended forty and one-half weeks, or 283.5 days, after October 19, 2015—the date of MMI.[6] By the Court's calculation, his original period of compensation ended on July 28, 2016. In that Mr. Lamm's injury prevented him from working anywhere on that date, the Court holds that he is entitled to a resulting award.[7]

---

[6] The medical testimony in the record does not support any different MMI date. The Court did not consider the half day in its calculation.

[7] In making this finding, the Court accepted Dr. Kennedy's opinion that Mr. Lamm's spinal condition restricts him from repeated bending, stooping or squatting, from working with his hands overhead, from

10

Subdivision (B) additionally provides that the resulting award of PPD is calculated by applying multipliers for certain factors. Mr. Lamm established that he is entitled to the application of multipliers of 1.35 for his inability to return to work; 1.2 for the fact he was over forty years old at the time the original compensation period ended; and 1.45 because he lacks a high school diploma or GED. After application of the above multipliers, the Court sets Mr. Lamm's resulting award at $23,772.01. In total, the Court awards Mr. Lamm $41,393.97 in PPD benefits.[8]

*Medical Benefits*

Mr. Lamm is entitled to future medical benefits for reasonable and necessary treatment of his compensable injury under Tennessee Code Annotated section 50-6-204. Dr. Jolley is the authorized treating physician.

**IT IS, THEREFORE, ORDERED:**

1. That EMC and/or its carrier shall pay Mr. Lamm original and resulting awards of PPD benefits totaling $41,393.97.

2. That EMC and/or its carrier shall provide Mr. Lamm future medical benefits for reasonable and necessary treatment of his compensable injury under the care of Dr. Jolley.

3. That counsel for Mr. Lamm may petition the Court for approval of an attorney's fee and reimbursement of costs.

4. That EMC and/or its counsel shall pay court costs of $150.00 to the Court Clerk under Tennessee Compilation Rules and Regulations Rule 0800-02-21-.07. Further, counsel for EMC shall prepare and submit a Statistical Data Form for this matter to WC.CourtClerk@tn.gov within ten business days of the date of judgment.

5. Absent an appeal, this order becomes final in thirty days.

---

climbing ladders and working at heights, and from lifting more than twenty pounds occasionally and ten pounds frequently.

[8] The Court holds that Mr. Lamm did not establish his claim to permanent total disability benefits.

**ENTERED** September 25, 2018.

_____

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical record: The Court considered the following filings in making its decision:

1. Petition for Benefit Determination
2. Expedited Hearing Order
3. Motion for Summary Judgment
4. Memorandum in Support of Motion for Summary Judgment
5. Statement of Undisputed Facts in Support of Motion for Summary Judgment
6. Scheduling Order
7. Post-Discovery Petition for Benefit Determination
8. Post-Discovery Dispute Certification Notice
9. Notice of Compensation Hearing
10. Order Denying Summary Judgment
11. Employee's Objection to Use of Form C-32
12. Pre-Compensation Hearing Statement
13. Employer's Motion to Exclude and/or Motion in Limine
14. Employer's Pre-Compensation Hearing Brief
15. Employer's Memorandum of Law in Support of Motion to Exclude and/or Motion in Limine
16. Employee's Response to Motion to Exclude and/or Motion in Limine

Exhibits: The Court either admitted the following exhibits into evidence or marked them for identification only after sustaining objection to the exhibit:

1. Two-volume transcript of the deposition of Dr. William E. Kennedy, plus attached exhibits
2. Two-volume transcript of the deposition of Dr. Jay Jolley, plus attached exhibits
3. Transcript of the deposition of Dr. John Sanabria, plus attached exhibits
4. Two-volume transcript of the deposition of Dr. Edward Kahn, plus attached exhibits

5. Transcript of the deposition of Physician Assistant Michael Wall, plus attached exhibits
6. Transcript of the deposition of Dr. Deaver Shattuck, plus attached exhibits
7. Form C-41 Wage Statements
8. Payroll records
9. Form C-42 Employee Choice of Physician Form
10. First Report of Injury
11. Medical records of Chota Community Health Services, Dr. Steve Sanders, Dr. Ken Kozawa, Sweetwater Hospital, Dr. James Fox, Outpatient Diagnostic Center, Parkwest Medical Center, Madisonville Primary Care Group, Dr. Jay Jolley, and Dr. Edward Kahn
12. Employer personnel file on Terry Lamm
13. Discovery responses
14. Transcript of the deposition of Nicholas Andrew Harrell, plus attached exhibits
15. Copy of the opinion in *Terry T. Lamm v. State of Tennessee.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on September 25, 2018.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| Joe Crabtree Employee Attorney | | X | josephcrabtree@bellsouth.net |
| Anastacia Shelton Nick Peterson Employer Attorney | | X | Anastacia.shelton@petersonwhite.com Nick.peterson@petersonwhite.com |

Penny Shrum w/permission

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

13



## Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                         RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing       $ _____ per month

Gas              $ _____ per month    Child Care     $ _____ per month

Transportation   $ _____ per month    Child Support  $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____        (FMV) _____

Other                   $ _____        Describe:_____

11. My debts are:

Amount Owed                    To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____

NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                    RDA 11082